| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BARUCH C. COHEN<br><br>BARUCH C. COHEN, ESQ.<br><br>LAW OFFICE OF BARUCH C. COHEN, APLC<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br><br>LOS ANGELES, CA 90010<br><br>323-937-4501<br><br>323-937-4503<br><br>159455<br><br>baruchcohen@baruchcohenesq.com<br>☐ Individual appearing without attorney<br>☒ Attorney for: DANIEL GARZA | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA** - LOS ANGELES DISTRICT

| In re: MARIO G. CARDONA | CASE NO.: 2:17-bk-22804-WB |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)**<br><br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: 1-30-2018<br>TIME: 10:00am<br>COURTROOM: 1375 |
| Debtor(s). | |

**Movant:** DANIEL GARZA, C/O BARUCH C. COHEN, ESQ.

1. **Hearing Location:**
   - ☒ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☐ 3420 Twelfth Street, Riverside, CA 92501
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  [X] This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  [ ] This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____ ; and, you may appear at the hearing.

    a.  [ ] An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  [ ] An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  [ ] An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: **1-2-2018**

BARUCH C. COHEN, ESQ.
. Printed name of law firm (if applicable)

Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. [ X ] Plaintiff
   b. [ ] Defendant
   c. [ ] Other (specify):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action:* Garza vs. City of Los Angeles; Police Officer Mario Cardona; Police Chief Charlie Beck
   b. *Docket number:* Case No. 2:16-cv-03579-SVW-AFM
   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending:* United States District Court – Central District of California
   d. Causes of action or claims for relief (Claims): Mario Cardona Violated Plaintiff's Right To Be Free From Unreasonable Search and Seizure - Detention and Arrest (42 U.S.C. § 1983);  To Be Free From Excessive Force (42 U.S.C. § 1983)

3. **Bankruptcy Case History:**

   a. [ X ] A voluntary [ ] An involuntary  petition under chapter  [ ] 7 [ ] 11 [ ] 12 [ X ] 13
      was filed on (date) 10-18-201 .

   b. [ ] An order to convert this case to chapter  [ ] 7 [ ] 11 [ ] 12 [ ] 13
      was entered on (date) _____ .

   c. [ ] A plan was confirmed on (date) n/a _____ .

4. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. [ ] Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. [ ] Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. [ X ] Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. [ X ] The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. [ X ] The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                          **F 4001-1.RFS.NONBK.MOTION**

f.  ☐  The bankruptcy case was filed in bad faith.

   (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

   (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

   (4) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g.  ☐  Other (specify):


5. **Grounds for Annulment of Stay.** Movant took postpetition actions against the Debtor.

   a.  ☐  The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

   c.  ☒  Other (specify): The USDC's Judgment on the Verdict for Plaintiff specifically provides that: "damages, costs, and fees shall be determined by a later stipulation or motion."

6. **Evidence in Support of Motion: (Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.)**

   a.  ☒  The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

   b.  ☐  Supplemental declaration(s).

   c.  ☐  The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

   d.  ☐  Other evidence (specify):


7. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☒ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☐ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☐ Other relief requested.

Date: _1-2-2018_

_BARUCH C. COHEN, ESQ._
Printed name of law firm (*if applicable*)

_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (name of Declarant) <u>VINCENT JAMES DESIMONE</u> _____ , declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

    ☐ I am the Movant.
    ☒ I am Movant's attorney of record in the Nonbankruptcy Action.
    ☐ I am employed by Movant as (title and capacity):
    ☐ Other (specify):

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movant is:

    ☒ Plaintiff
    ☐ Defendant
    ☐ Other (specify):

4.  The Nonbankruptcy Action is pending as:

    a.  *Name of Nonbankruptcy Action:*  Garza vs. City of Los Angeles; Police Officer Mario Cardona; Police Chief Charlie Beck
    b.  *Docket number:* Case No. 2:16-cv-03579-SVW-AFM
    c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending:* United States District Court – Central District of California

5.  **Procedural Status of Nonbankruptcy Action:**

    a.  The Claims are:

        Mario Cardona Violated Plaintiff's Right To Be Free From Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983); To Be Free From Excessive Force (42 U.S.C. § 1983)

    b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit _____ .

    c.  The Nonbankruptcy Action was filed on (date) <u>May 23, 2016</u> .

    d.  Trial or hearing began/is scheduled to begin on (date) <u>June 2017</u> .

    e.  The trial or hearing is estimated to require _____ days (specify).

    f.  Other plaintiffs in the Nonbankruptcy Action are (specify):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                          **F 4001-1.RFS.NONBK.MOTION**

g. Other defendants in the Nonbankruptcy Action are (*specify*): City of Los Angeles; Police Chief Charlie Beck

5. **Grounds for relief from stay:**

a. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b. ☒ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate. The insurance carrier and policy number are (*specify*):

d. ☒ The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1) ☐ It is currently set for trial on (*date*) _____ .

   (2) ☐ It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____ . The basis for this belief is (*specify*): The USDC's Judgment on the Verdict for Plaintiff specifically provides that: "damages, costs, and fees shall be determined by a later stipulation or motion."

   (3) ☐ The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e. ☐ The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☒ The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*): CREDITOR'S ATTORNEYS FEES ONCE AWARDED WILL EXCEED THE DEBT CEILING OF 11 USC SECTION 109(E). DEBTOR FILED BANKRUPTCY TO CUTOFF CREDITOR'S ATTORNEYS FEES AND COSTS

   (3) ☐ Multiple bankruptcy cases affecting the Property include:

     (A) Case name:
     Case number:                Chapter: 13
     Date filed:        Date discharged:        Date dismissed:
     Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                     Page 7                     **F 4001-1.RFS.NONBK.MOTION**

(B) Case name:
Case number:                              Chapter:
Date filed:                  Date discharged:           Date dismissed:
Relief from stay regarding this Nonbankruptcy Action   ☐ was ☐ was not  granted.

(C) Case name:
Case number:                              Chapter:
Date filed:                  Date discharged:           Date dismissed:
Relief from stay regarding this Nonbankruptcy Action   ☐ was ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.  ☒ See attached continuation page for other facts justifying relief from stay.

6.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1-2-2018   VINCENT JAMES DESIMONE
Date        Printed name                                  Signature

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 8                    F 4001-1.RFS.NONBK.MOTION

1  Baruch C. Cohen, Esq. (SBN 159455)
   **LAW OFFICE OF BARUCH C. COHEN**
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   (323) 937-4501        Fax (323) 937-4503
4  e-mail: baruchcohen@baruchcohenesq.com

5  Vincent James DeSimone, Esq. (SBN 119668)
   **V. JAMES DESIMONE LAW**
6  13160 Mindinao Way Suite 280
   Marina Del Rey, CA 90292
7  (310) 693-5561
   e-mail: vjdesimone@gmail.com
8
   Kaveh Navab, Esq. (SBN 280235)
9  **NAVAB LAW**
   13160 Mindanao Way, Ste. 280
10 Marina Del Rey, CA 90292
   (310) 826-1002
11 e-mail: Navablaw@gmail.com

12 *Attorneys For Creditor DANIEL GARZA*

13                   **UNITED STATES BANKRUPTCY COURT**

14                   **CENTRAL DISTRICT OF CALIFORNIA**

15                        **LOS ANGELES DIVISION**

16

17  In re                              Case No.  2:17-bk-22804-WB

18  MARIO G. CARDONA,                  Assigned to the Honorable Julia Brandt

19          Debtor                     Chapter 13

20

21                                     **DECLARATION OF VINCENT JAMES
                                       DESIMONE IN SUPPORT OF MOTION FOR**
22                                     **RELIEF FROM THE AUTOMATIC STAY
                                       UNDER 11 U.S.C. § 362 (WITH**
23                                     **SUPPORTING DECLARATIONS) (ACTION
                                       IN NONBANKRUPTCY FORUM)**
24                                     Date: 1-30-2018
                                       Time: 10:00 am
25                                     Place: Courtroom 1375
26                                             255 E. Temple Street, Los Angeles CA

27

28

1/2-6:31pm

1                        DECLARATION OF V. JAMES DESIMONE, ESQ

2        I, V. JAMES DESIMONE, declare and state as follows:

3    1.    The facts stated below are true and correct to the best of my personal knowledge and if

4          called upon to testify to them, I could and would competently do so.

5    2.    I am a member in good standing and eligible to practice before all courts of the State of

6          California.

7    3.    I am the principal attorney and owner of V. James DeSimone Law

8    4.    I proudly represent Daniel Garza in the United States District Court - Central District of

9          California entitled: _Daniel Garza vs. City of Los Angeles; Police Officer Mario Cardona;_

10       _Police Chief Charlie Beck_, Case No. 2:16-cv-03579-SVW-AFM.

11   5.    This declaration is in support of the **MOTION FOR RELIEF FROM THE**

12       **AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING**

13       **DECLARATIONS) (ACTION IN NONBANKRUPTCY FORUM)**

14   6.    The June 26, 2017 verdict for $210,000.00 and finding by the jury that Mario Cardona

15       ("Cardona or Debtor") acted with malice toward Daniel Garza ("Mr. Garza or Creditor")

16       marked the culmination of extensive work and effort by Plaintiff's counsel who sought to

17       vindicate the constitutional rights of Mr. Garza.  The district court action (Case No.

18       2:16-cv-03579-SVW-AFM) arises out of an incident that occurred on May 14, 2015, when

19       Los Angeles Police Department Officer Mario Cardona, used excessive and unreasonable

20       force against Mr. Garza, by punching Mr. Garza over twenty times in the face and body,

21       handcuffing him, and for over ten minutes he was straddling Mr. Garza using his total body

22       weight, twisting his wrists, after handcuffing Garza in LAPD handcuffs, causing

23       excruciating pain and significant injuries.  The complaint was filed on May 23, 2016 in the

24       United States District Court, Central District of California. Plaintiff's counsel was diligent

25       in filing the lawsuit, pursuing written discovery, participating in 21 depositions, locating

26       and speaking with witnesses, and subpoenaing LAPD officials to obtain evidence to

27

28

1     undermine Defendant's contentions.

2 7.     The USDC's Judgment on the Verdict for Plaintiff specifically provides that: "damages,

3       costs, and fees shall be determined by a later stipulation or motion."

4 8.     However, before we could file our motion for attorneys fees whichj is estimated to be

5       approximately **$632,000.00** (not including costs, and expenses), Debtor filed bankruptcy.

6 9.     In addition to opposing the chapter 13 plan, we are also filing this Proof of Claim for the

7       approximate **$842,000.00** (not including costs, and expenses) which clearly exceeds the

8       unsecured debt limit of $394,725 established by 11 U.S.C. § 109(e). We will also be

9       moving to lift the automatic stay for permission to file the attorneys fees motion in the

10      USDC to more formally liquidate our claim (which we anticipate to be an additional

11      $20,000.00, to then return to this Court to further prosecute our objection to the plan and

12      request for dismissal.

13 10.     A further breakdown of our approximate **$632,000.00** in legal fees  (not including

14      paralegals, costs, and expenses) is as follows:

15 11.     From May 2016 to the time of trial in June 2017, my legal team and I reviewed numerous

16      documents, interviewed numerous witnesses, took and defended depositions, reviewed

17      deposition transcripts and videos, discussed case strategy, conducted research, assisted

18      with the opposition to the motions to dismiss, the opposition to the motion for summary

19      judgment, ex parte applications, opposed four motions in limine filed the City of Los

20      Angeles, opposed three motions in limine filed by Officer Cardona, pretrial pleadings and

21      jury instructions. I was actively involved in all aspects of these tasks as well as settlement

22      negotiations, but Defendants never made an offer anywhere close to compensate Mr. Garza

23      for this harm. Our team spent significant time with Mr. Garza as this was a difficult time

24      for him.  Our legal team also met with him several times prior to trial so that he would feel

25      comfortable with the process, which was very intimidating to him.   The legal team

26      consisted of Kaveh Navab, who took the lead on many pre-trial aspects of the case,

27

28

Carmen Sabater, who assisted Mr. Navab in the discovery process, and Ryann Hall, who became fully involved in opposing the summary judgment, all pre-trial filings including MIL briefing, jury instructions, the Pre-Trial Order and Memorandum of Contentions of Fact and Law.  I conducted  key depositions in the case and was fully involved in all strategic decision making and discovery work.

12.  Mr. Garza first retained our services on April 9, 2016, and we began working diligently on his case. Myself, Kaveh Navab, and Carmen Sabater spent approximately 25 hours reviewing documents, intake and meetings with Mr. Garza and drafting, editing, finalizing, and filing the Federal Court complaint. The Federal Court complaint was filed on May 23, 2016, and the attorney fees for this stage of the litigation was approximately **$12,000.00**.

13.  Between June 2016 and January 2017, Plaintiff's counsel conducted meetings of counsel with Defendants, conducted numerous internal meetings with Plaintiff's counsel, drafted disclosures to Defendants, meet and conferred over protective orders, filing of protective orders, propounded extensive written discovery on Defendant Mario Cardona, responded to extensive written discovery propounded by Defendant Mario Cardona, meeting Mr. Garza and witnesses, conducted extensive fact discovery, reviewed documents, and responded to a motion to dismiss filed. The attorney fees for this stage of litigation was approximately **$75,000.00**.

14.  Beginning in February 2017, and through June 16, 2017, there were 21 depositions taken in the matter. These depositions included, the Plaintiff, Defendant Mario Cardona, numerous fact witnesses, supervisory personnel within the LAPD, Sheriff's Department officers, PMK depositions, and expert witnesses retained by Plaintiff and Defendant. Each deposition necessitated extensive preparation time, averaging approximately 16 hours per deposition, which includes the review of numerous documents, meetings among Plaintiff's counsels, travel time, meeting and conferring on document production, and further written discovery. During this period of time Plaintiff's counsel also spent a considerable amount

of time on retaining and preparing experts. Moreover, in May 2017, Plaintiff's counsel had to oppose and argue a critical ex-parte discovery motion. Similarly, the parties engaged in mediation on May 17, 2017 and in preparation for this mediation had to draft an extensive mediation brief, prepare for the mediation, and attend the mediation. The attorney fees for this stage of litigation was approximately **$200,000.00**.

15. In May 2017, Plaintiff's counsel had to oppose a very contentious and lengthy Motion for Summary Judgment on numerous claims. The motion for summary judgment required significant work and hours, including the review of numerous depositions, exhaustive legal research on complex legal issues, response to facts in the separate statement, approximately 18 exhibits, numerous drafts and revisions. The Motion for Summary Judgment opposition was worked on by four attorneys, including myself, Kaveh Navab, Ryann Hall and Carmen Sabater, as well as, numerous support staff within our office. In addition to drafting an opposition to the Motion for Summary Judgment we had to argue the motion before the Court. The attorney fees for this stage of litigation was approximately **$50,000.00**.

16. Prior to trial commencing on June 21, 2017, Plaintiff's counsel spent a significant amount of time preparing for trial, drafting pre-trial documents, drafting and opposing motions in limine, drafting and filing a memorandum of contentions of law and fact, Pre-Trial Conference Order, opposing an ex-parte, meeting with witnesses, review of deposition transcripts, subpoenaing witnesses, jury instructions, and meeting and conferring with Defense counsel on pre-trial filings, and preparing and attending a pre-trial conference hearing before the Court. Between myself, Kaveh Navab, Ryann Hall and Carmen Sabater, as well as the support staff, the attorney fees for this stage of litigation was approximately **$175,000.00**.

17. Trial commenced on June 21, 2017 and lasted four days. The trial was rather contentious and involved numerous witnesses, and expert testimony. I was lead trial counsel on the

matter, and was assisted by Kaveh Navab, Ryann Hall and Carmen Sabater throughout

trial, as well as, support staff. Each day involved at least 12 hours of work for each attorney

involved, which included trial time, travel time and preparation before and after trial for

the day. The attorney fees for the time at trial was approximately **$120,000.00**.

18.     The jury was impaneled and the trial *Garza v. Cardona* et al. began on June 21, 2017. I

was lead trial attorney. Kaveh Navab was actively involved in all aspects of case

preparation including the taking and defending of key depositions. Ryann Hall, an

Associate with Bohm Law Group, a firm of which I am Of Counsel participated in most

aspects of trial preparation and was at Counsel table providing the demonstrative evidence

presentation.  The trial lasted four days, which included a liability phase and a damages

phase. On June 23, 2017, the jury began deliberations and returned a liability verdict in

favor of Plaintiff. On June 26, 2017, after a presentation of the evidence on damages, the

jury began deliberating and returned a verdict of $210,000 in damages. The verdict was an

exceptional result and reflected the substantial harm done to Mr. Garza as well as the

manner in which that harm was conveyed to the jury.

19.     The jury trial in the matter was separated into two phases. After phase one, which lasted

three days, the jury returned a verdict for Mr. Garza finding that Cardona was liable to Mr.

Garza for excessive force pursuant to 42 U.S.C. § 1983. In the second phase of the trial, the

jury decided two questions: (1) What damages Mr. Garza suffered as a result of Cardona's

conduct; and (2) Whether Cardona acted with malice toward Mr. Garza. The jury answered

$210,000.00 on the first question, and "Yes" on the second question. On September 18,

2017, the district court entered a "Judgment on the Verdict for Plaintiff", issuing an order

outlining the above.

20.     All attorney time expanded was necessary given the challenge of prosecuting a case in

which Defendant Cardona contended that Mr. Garza was aggressive and the force used

against Mr. Garza was reasonable. Moreover, although there is a videotape showing the

excessive force Office Cardona used on Mr. Garza, who was not resisting arrest, Defendant's litigation strategy was to paint him as aggressive and as provoking the entire incident by challenging Officer Cardona and using profanities. The nature of Defendant's vigorous defense necessitated the expenditure of attorney time so that Mr. Garza was afforded a fair trial. Prosecution of this matter required an unusual degree of diligence and consumed an inordinate amount of the Plaintiff's counsel's time, in particular, leading up to trial because there were twenty-one (21) depositions taken, a motion to dismiss, motion for summary judgment, two separate ex parte filings, and hearings in preparation for trial. Officer Cardona was represented by an experienced private law firm and the City of Los Angeles was represented by the City Attorney's Office who, on the one hand, wanted to prove Officer Cardona did not do anything wrong but, on the other hand, if he did do something wrong, they sought to avoid indemnification. This made for several contentious proceedings. Indeed, at one point Plaintiff's counsel had to seek court intervention and a court order, which was granted, restricting Cardona from bringing his work gun to depositions out of fear from Mr. Garza and counsel. Leading up to trial, Plaintiff's counsel opposed seven (7) motions in limine, and spent a substantial amount of time on jury instructions, the verdict form and other trial documents, prior to and during trial.  Plaintiff diligently prepared for, and conducted trial, insuring that key witnesses testified at trial in a timely and efficient manner. Defendants' counsel, put up a vigorous defense necessitating dedicated and vigilant prosecution of this complex Section 1983 case. The jury ultimately rejected the arguments the jury returned a verdict in favor of Plaintiff for $210,000.00 and made a finding that Cardona acted with malice.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed January 2, 2018, at Los Angeles, California.

By ___ /S/ V. James Desimone ___

V. JAMES DESIMONE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

| | |
|---|---|
| Daniel Garza<br><br>PLAINTIFF(S)<br><br>v.<br>CITY OF LOS ANGELES; Police Officer MARIO CARDONA; Police Chief CHARLIE BECK, in his individual and official capacity; and DOES 1-10, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>2:16-cv-03579-SVW-AFM<br><br>**JUDGMENT ON THE VERDICT FOR PLAINTIFF** |

This action having been tried before the Court sitting with a jury, the Honorable ___Stephen V. Wilson___, District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

IT IS ORDERED AND ADJUDGED that the plaintiff:

Daniel Garza

take from the Defendant(s)

CITY OF LOS ANGELES; Police Officer MARIO CARDONA; Police Chief CHARLIE BECK, in his individual and official capacity; and DOES 1-10, inclusive,

consistent with the Court's attached Order. Judgment on the verdict is entered for the Plaintiff in the amount of $210,000 for his § 1983 claims against Defendant Cardona. Judgment on the verdict is entered for the City of Los Angeles on Cardona's crossclaims for indemnification and defense against the City. Judgment as a matter of law is entered for the City of Los Angeles on the Plaintiff's § 1983 claim against the City on the theory of *Monell* liability. Damages, costs, and fees shall be determined by a later stipulation or motion.

Clerk, U. S. District Court

Dated: ___September 18, 2017___

By _Paul M. Cruz_
Deputy Clerk

At: ___Los Angeles, California___

cc:    Counsel of record

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**  IN CHAMBERS ORDER DIRECTING THE ENTRY OF JUDGMENT AS A MATTER OF LAW AND ALLOWING JUDGMENT ON THE VERDICT FOR THE CITY OF LOS ANGELES [182].

Plaintiff Daniel Garza ("Plaintiff") brings this action against the City of Los Angeles ("City"), Chief of Police Charlie Beck,[1] and Officer Mario Cardona, for violation of his civil rights under 42 U.S.C. § 1983, in addition to various state law torts.[2] Dkt. 1. The Plaintiff alleges that he was detained, arrested, and handcuffed by Officer Cardona because of a personal vendetta Cardona had against him as the result of the Plaintiff's relationship with Cardona's stepdaughter. The Plaintiff brought § 1983 claims for excessive force against Cardona as well as municipal liability claims against the City and Chief Beck ("City Defendants"). Additionally, Cardona has brought crossclaims against City Defendants for failure to indemnify and defend him as required by state law.

The claims in this case that remained when trial began can be divided into three categories: 1) the Plaintiff's § 1983 claim against Defendant Cardona; 2) the Plaintiff's § 1983 claim against the City based on *Monell* liability; and 3) Cardona's crossclaims for defense and indemnification against the City. Judgment on the verdict has already been entered for the Plaintiff with regards to his § 1983 claim against Defendant Cardona. Dkt. 182. For the following reasons, the Court will now DIRECT entry of judgment as a matter of law for the City with regards to the Plaintiff's § 1983 *Monell* claim and

---

[1] The Plaintiff brought claims against Chief Beck in both his official and individual capacities. The Court dismissed all claims against Chief Beck before trial. Dkt. 150.

[2] The Plaintiff dismissed his state law tort claims prior to trial.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**Exhibit "A"        Page 2 of 18**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

will ALLOW judgment on the verdict for the City with regards to Cardona's crossclaims.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

While many of the facts in this case were disputed by the parties, a jury has now rendered verdicts in two separate phases of trial, thus resolving the most significant and relevant factual disputes. The Court will review the varying factual accounts presented by the parties to the jury[3] and how the jury resolved the relevant disputes.    The Court will then analyze the remaining legal questions with regards to the two claims on which judgment as not been entered –Defendant Cardona's crossclaims for indemnification and defense against the City and the Plaintiff's §1983 claim against the City.

#### A.    Plaintiff and Villanueva's Relationship

Plaintiff Garza and Defendant Cardona had been neighbors since late 2012/early 2013.    Dkt. 74, UMF ¶ 1.    Cardona was living with his wife, Cherie, who had a daughter named Naomi Villanueva ("Villanueva").

In September 2013, the Plaintiff and Villanueva began to date.    Dkt. 74, UMF ¶ 7.    Cardona and Cherie forbid the Plaintiff from dating Villanueva because they believed the Plaintiff was too old for Villanueva.    Dkt. 74, UMF ¶ 8.    The Plaintiff was 24, and Villanueva had just turned 18.    *Id.* at ¶ 10. Despite Cardona and Cherie's disapproval, the Plaintiff and Villanueva secretly dated.    *Id.* at ¶ 11. The date on which the couple broke up and which person broke up with the other was disputed at trial.

#### B.    Night of May 1, 2015

Cardona and the Plaintiff presented the jury with diametrically opposing descriptions of what occurred on May 1 and 2, 2015.    The Court notes that the night of May 1, 2015, initially appeared significant to the jury's determination of the Plaintiff's claims, as the Plaintiff originally contended that he was illegally seized due to Cardona's personal feelings toward the Plaintiff.    However, during trial

---

[3]  The Court will cite to pretrial briefing in its summary of the parties' factual accounts, as the pretrial accounts of the parties mostly coincided with the evidence presented at trial.    However, the Court will note when the evidence presented at trial differed from or supplemented the pretrial evidence if relevant to the Court's findings in this Order.    The Court will also note the jury's findings and how they resolved certain factual disputes between the parties.

Initials of Preparer                :

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

the Plaintiff decided to drop the illegal seizure claim and proceed solely on his excessive force claim. Therefore, because the question of whether probable cause supported Cardona's initial seizure of the Plaintiff was no longer at issue in the case, the background motivations of Cardona became less relevant to the questions before the jury.    However, the background events remain somewhat relevant because they were heard by the jury and they may have played a role in the motivations of the parties.

Cardona alleged that on the night of May 1, 2015, the Plaintiff entered Villanueva's bedroom via the window without her knowledge or consent.    Dkt. 91, SGI ¶ 60.    When Villanueva and her roommate asked the Plaintiff to leave, the Plaintiff left and returned with a metal baseball bat from his trunk.    *Id.* at ¶¶ 61, 62.    The Plaintiff then grabbed Villanueva's arm, and without her consent, took her to his car.    *Id.* at ¶ 63.    The Plaintiff drove around for fifteen to twenty minutes while holding Villanueva against her will.    *Id.* at ¶ 65.    The Plaintiff forced Villanueva to go to Cardona's house and knocked on the door, while Villanueva screamed for her mother.    On the early morning of May 2, 2015, Cardona watched Plaintiff flee his house and did not follow him.    *Id.* at 67.    Villanueva and her roommate both testified at trial and generally presented this account to the jury, with some minor inconsistencies.

According to the Plaintiff, on the night of May 1, 2015, Villanueva opened the front door of her apartment for him and they went into her room together to talk.    Dkt. 94, PSSUMF ¶ 126.    The Plaintiff asked Villanueva if Michael, whom the Plaintiff believed Villanueva was "hooking up with," was at the residence, and she admitted he was.    *Id.* at ¶¶ 177, 129.    When the Plaintiff told Villanueva they were done and walked out of the residence, Villanueva followed him saying she needed to talk to him.    *Id.* at ¶¶ 130, 132-33.    Villanueva got into the passenger's side of the car willingly and they drove directly to Cardona's home.    *Id.* at ¶¶ 135-36.    When Villanueva said that the Plaintiff would never be able to see her again if he went home without talking to her, the Plaintiff began knocking on Cardona's door and ringing the doorbell.    *Id.* at ¶ 137.    Villanueva then got out of the car, approached the door and began yelling "Mom, Mom, Mom, Mom."    *Id.*    Villanueva ran inside as soon as the door opened, and Cardona told Plaintiff to "get the fuck off the property."    *Id.* at ¶ 136.    Plaintiff backed away and said, "That's fine. I don't want anything to do with her. I caught her cheating on me."    *Id.*    Plaintiff then walked home.    *Id.*    The Plaintiff testified extensively at trial about these events and reiterated that he broke up with Villanueva.

| | | : |
|---|---|---|
| | Initials of Preparer | |
| | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

### C.  **Incident Report**

On May 2, 2015, Villanueva and Cherie went to the Downey Police Department to report the incident.   Dkt. 94, PSSUMF ¶ 139.   However, Villanueva told the officer she did not want to prosecute, so they did not file an incident report.   *Id.* at ¶ 140.

On the morning of May 14, 2015, Cherie filed an incident report[4] on her own with the Downey Police Department and so informed Cardona via text message.   *Id.* at ¶ 141; dkt. 74, UMF ¶ 19. Cherie testified at trial about filing this report and notifying Cardona that a report had been filed.   She testified at trial that the report was filed by the Downey police as a professional courtesy.   The report did not consist of an arrest warrant and did not have any binding legal significance.

City Defendants emphasized that Cardona was only aware that a report had been made, and that he was not aware of its specific allegations.   Dkt. 74, UMF ¶ 20.   On the other hand, the Plaintiff contended that Cardona knew "what kind of report would have been taken" since Cardona stated that as a police officer, he was able to "put a title to all of the crimes that [he believed Garza] had done."   Dkt. 94, PSSUMF ¶ 145.   According to Cardona, although he did not talk with his wife regarding the specifics of the police report, he expected that the report would document the fact that the Plaintiff had committed a burglary, kidnapping, and domestic violence.   Dkt. 91, SGI ¶ 76.   He also testified that he understood at the time that the report would not have immediately led to an arrest warrant for the Plaintiff.

### D.  **May 14 Incident**

Cardona and the Plaintiff again presented diametrically opposing descriptions to the jury of what occurred on May 14, 2015.   The parties' opposing descriptions of the May 14 incident constituted the center of this case and undoubtedly created the most significant factual dispute the jury was asked to resolve.

According to the Plaintiff, on May 14, 2015, at approximately 11:30 a.m., he was exercising in front of his house when Cardona pulled his truck into his own driveway across the street.   Dkt. 94,

---

[4]  Cherie testified that she went to make a report, not an incident report.   Dkt. 91, SGI ¶ 19.

Initials of Preparer

:

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

PSSUMF ¶ 28.   Getting out of his truck, Cardona yelled, "Hey, come here," at the Plaintiff.   *Id.* at ¶ 54.   They met at the corner of the Plaintiff's property, and Cardona then hit Plaintiff on the right side of his head with his left fist.   *Id.*   The Plaintiff testified that Cardona punched him four to six times while he was standing.   *Id.* at ¶ 57.   Cardona then caused the Plaintiff to fall to the ground on his side by grabbing the Plaintiff's sweater, *id.* at ¶¶ 58, 59, and punched the Plaintiff at least twenty times.   *Id.* at ¶ 60.   At Cardona's request, his mother, who had been in the car with him, brought him his bag, which contained LAPD handcuffs.   *Id.* at ¶ 63.   Cardona handcuffed the Plaintiff's right arm and threatened to break Plaintiff's shoulder unless Plaintiff gave Cardona his left arm.   *Id.* at ¶ 65.   The Plaintiff pulled out his left arm, and Cardona pulled it back hard and handcuffed it.   *Id.*   Cardona straddled Plaintiff, while he was laying down on his stomach, and twisted the Plaintiff's wrists for an extended period of time, despite the fact that Plaintiff was not resisting.   *Id.* at ¶ 66.   The Plaintiff notes that although he did not attempt to strike or resist Cardona at any time, Cardona commanded the Plaintiff to "stop resisting" loud enough for witnesses to hear.   *Id.* at ¶ 67.   The Plaintiff claims he was handcuffed for at least 20 to 25 minutes while Cardona was on his back. *Id.* at ¶ 75.   While the Plaintiff and his witnesses testified at trial in much greater detail regarding what was said and done during the altercation, the important factual allegations presented to the jury remained consistent.

According to Cardona, when he had arrived home and was trying to remove his baby from the car seat, the Plaintiff yelled at him from his front yard, "What the fuck are you looking at?   I don't care that you're a police officer.   I'll kick your ass."   Dkt. 91, SGI ¶ 78.   Cardona responded by stating, "Fuck you," which he claims is an example of tactical language consistent with the LAPD training he received.   *Id.* at ¶¶ 79, 80.   The Plaintiff continued making threatening comments, and started advancing on Cardona and his family with clenched fists, telling Cardona to meet him in the street.   *Id.* at ¶ 81.   When they met at the intersection, the Plaintiff threw a punch at Cardona's face but Cardona deflected it to his chest.   *Id.* at ¶ 87.   Using leg sweeps, Cardona took the Plaintiff to the ground.   *Id.* at ¶ 89.   Cardona used the LAPD handcuffs his mother brought him from his car to handcuff the Plaintiff.   *Id.* at ¶ 96.   Cardona claims that the Plaintiff kept moving his head from side to side, kicking his legs, and trying to get up despite his command to stop resisting.   *Id.* at ¶¶ 91, 92.   Cardona claims he never struck, kicked, or punched Plaintiff in any way during the process of getting control over Plaintiff.   *Id.* at ¶¶ 93, 94.   Again, Cardona testified at trial in greater detail but generally consistent with this initial description.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**Exhibit "A"      Page 6 of 18**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

### E. 911 Calls

There was no dispute at trial among the parties that Cardona called 911 twice.    Dkt. 94, PSSUMF ¶ 69.    However, the parties highlighted different aspects of the call at trial.    City Defendants emphasize that in the first call, Cardona identified himself as an off-duty Los Angeles police officer because Department policy requires officers to so identify themselves whenever dealing with a law enforcement agency from another jurisdiction.    Dkt. 74, UMF ¶ 36.    City Defendants also note that Cardona made no mention of his status as a police officer in his second 911 call.    *Id.* at ¶ 37.    The Plaintiff emphasizes that when Cardona called 911 he told the dispatcher he "took a kidnap suspect into custody" and stated "[t]here's a report with Downey.    We took it this morning."    Dkt. 94, PSSUMF 69.    The Plaintiff also states that on the 911 call, Cardona described the situation as "Code 4", a situation "when the suspect is in custody and there is no longer a threat."    *Id.* at ¶¶ 69, 70.    Cardona stressed that he said he had a kidnap suspect in the 911 calls so the sheriffs would come faster.    Dkt. 91, SGI ¶ 101.    The City also took this view, noting that Cardona told the 911 operator that he had a kidnapping suspect in order to get local law enforcement officers to respond more quickly than if he had told them he just had a battery suspect.    Dkt. 74, UMF ¶ 42.

### F. Bystanders

While waiting for local authorities to arrive, Cardona told passerby, including another off-duty LAPD Officer Garcia, that he was a police officer and the Plaintiff was a kidnapping suspect in a report made at the Downey Police Department that morning.    Dkt. 74, UMF ¶ 38.    Garcia recognized that Cardona was a law enforcement officer based on Cardona's attire and his use of police tactics.    Dkt. 91, SGI ¶ 98.    Garcia testified that he did not see Cardona strike or hit the Plaintiff in any way, and that Cardona seemed to have everything under control.    *Id.* at ¶ 106.    Garcia stated that Cardona was "cradling" the Plaintiff by maintaining a top position, which he recognized as a standard LAPD technique to control a suspect and to prevent escape.    *Id.* at ¶ 108.    Garcia also saw that Cardona used a wrist lock to keep the Plaintiff under control.    Garcia stated he did not see any injuries on the Plaintiff.    *Id.* at ¶ 107.    When Cardona told Garcia that he had control of the incident, Garcia gave Cardona his contact information if it was needed for any reason and left the scene.    *Id.* at ¶ 113; dkt. 94, PSSUMF ¶ 78.    Garcia testified at trial.

Daniel Laughlin, one of the bystanders, began videotaping the incident on his phone.    When he

Initials of Preparer                                                :

                                                                          PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

told Cardona, "Wow, that looks like it hurts," Cardona responded, "Yeah, it does, now get back."   Dkt. 94, PSSUMF ¶ 74.   Laughlin testified he was aware Cardona was an officer because he addressed himself as Officer Cardona of LAPD on a phone call, loud enough for witnesses to hear.   *Id.*   When other bystanders told Cardona to let the Plaintiff go, Cardona responded that he would not let the Plaintiff go because he has a "kidnap suspect out of Downey."   Dkt. 91, SGI ¶ 112.   The Plaintiff played the video that Laughlin took for the jury, which began after Cardona had already taken the Plaintiff to the ground and handcuffed him.   However, the video included footage of the wrist lock used by Cardona on the Plaintiff after he was handcuffed and the Plaintiff's cries of pain.   Laughlin also testified for the jury about his observations and actions that day.

### G. Investigation

When Sgt. II Hoskins and Sgt. II Wehr, Cardona's supervisors, arrived at the scene, Cardona was placed on-duty from the beginning of the incident and was ordered to submit overtime slips for all those hours.   Dkt. 91, SGI ¶ 115.   Captain, now Commander, Prokop was in agreement.   *Id.*   Sgt. II Hoskins testified that under the circumstances, Cardona's actions were within LAPD policy.   *Id.* at ¶ 118.   Prokop testified that at the time of the incident, he believed Cardona was acting in the course and scope and employment with the LAPD when he arrested the Plaintiff.   Dkt. 94, PSSUMF 88.   Prokop has since changed his position and stated that Cardona should have called 911 and waited for back up before addressing the Plaintiff.   *Id.* at ¶¶ 89, 90.   A protection detail was subsequently assigned and surveillance cameras were installed to protect Cardona and his family from the Plaintiff.   Dkt. 91, SGI ¶ 117.

After a completed nine-month investigation, the LAPD sent a letter to the Plaintiff informing him that three of his allegations of misconduct were determined to be "unfounded," meaning that the allegation did not occur, and that the fourth allegation was determined to be "exonerated," meaning that the action occurred but was found to be within LAPD policy.   Dkt. 91, SGI ¶ 122; dkt. 94, PSSUMF ¶ 95.   The Internal Affairs Investigation and the Use of Force Investigation were both completed before the letter was sent to Plaintiff on February 29, 2016.   Dkt. 91, SGI ¶ 123.   The letter reflects that both investigations were concluded in Cardona's favor.   *Id.*   The Plaintiff claims that internal affairs had the discretion to broaden the investigation to determine whether Cardona violated policy but they did not do so.   Dkt. 94, PSSUMF ¶ 97.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

The Court did not allow the parties to present evidence of the LAPD investigation at trial, as the Court found such testimony to be irrelevant and unduly prejudicial.    The jury was asked to determine whether Cardona acted with excessive force; conclusions from police officers or experts regarding whether Cardona acted with excessive force would inappropriately infringe on the province of the jury. However, several police experts and officers testified about the LAPD wrist lock policy and when the use of a wrist lock was within policy and when it was not.

### H.  Trial

The Court separated the phases of the trial into discrete parts.    Trial began on June 21, 2017, with the first phase of trial addressing the liability of Cardona for the Plaintiff's § 1983 claim.    Dkt. 158.    As discussed above, the Plaintiff's § 1983 claim against Cardona eventually consisted of only his excessive force claim, as he decided not to pursue his unlawful seizure claim.    The jury was told that in order to prevail on his §1983 claim against Cardona, the Plaintiff needed to prove that Cardona acted under color of state law and that his actions deprived the Plaintiff of his rights under the laws of the United States.    Dkt. 171.    The Court told the jury that a "person acts 'under color of state law' when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation."    *Id.*    After three days of trial, the jury returned a verdict for the Plaintiff, finding that Cardona was liable to the Plaintiff under § 1983.    Dkt. 174.

After the jury returned a verdict for the Plaintiff on the first phase of trial, a second phase of trial began the following Monday.    To start, the Court asked the jury a clarifying question regarding their previous verdict.    The Court asked the jury whether they found that Cardona had "acted" in the performance of official duties, as they might have found that Cardona merely "purported" to act in the performance of his official duties in finding that he acted under color of state law.    Dkt. 171.    After briefly deliberating on the question, the jury answered that they had found that Cardona had "acted in the performance of his official duties."

After the Court received the answer to this question, the second phase of trial began.    Dkt. 181. The second phase of trial involved the damages suffered by the Plaintiff and lasted one day, at the end of which the jury returned a verdict.    Dkt. 181.    The jury was asked two questions as a part of phase two: "What damages did Plaintiff Daniel Garza suffer as a result of Defendant Mario Cardona's conduct?" and "Did Defendant Mario Cardona act with malice towards Plaintiff Daniel Garza?"    Dkt. 186.    The

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**Exhibit "A"      Page 9 of 18**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

jury answered "210,000.00" on the first question and "Yes" on the second question.   *Id*.   After the second phase of trial was complete, the only remaining claim that had not been decided by the jury was the Plaintiff's § 1983 claim against the City under a *Monell* theory of liability.   The Court informed the parties that this Order would issue addressing that claim.

### II.   LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

In ruling on a post-trial motion for judgment as a matter of law, a court may enter judgment against a party as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party" as to an issue on which that party has been fully heard during trial.   Fed. R. Civ. P. 50(a), (b).   In making this determination, courts may not make credibility determinations or weigh the evidence.   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Go Daddy*, 581 F.3d at 961.   A court "may not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at 1227.   "In ruling on the renewed motion [under Rule 50(b)], the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."   Fed. R. Civ. P. 50(b).

### III.   DISCUSSION

As the Court stated before, there were three claims at issue in this case when the jury trial started: 1) the Plaintiff's § 1983 claim against Defendant Cardona; 2) Defendant Cardona's crossclaims for defense and indemnification against the City; and 3) the Plaintiff's § 1983 claim against the City based on *Monell* liability.   The Court now finds that all three have been resolved by the jury or are now resolvable by this Court as a matter of law.   This Order will enter judgment on all three claims, either on the verdict or as a matter of law, which will complete this litigation.

#### A.   Plaintiff's § 1983 Claim Against Defendant Cardona

The easiest claim to address is the Plaintiff's § 1983 claim against Defendant Cardona as an individual.   The first phase of trial addressed Cardona's liability for the Plaintiff's § 1983 claim.   In a general verdict, the jury found for the Plaintiff on that claim.   Dkt. 174.   In the second phase of trial, the jury awarded $210,000 in damages to the Plaintiff on the § 1983 claim against Cardona.   Dkt. 186. The Court has already entered judgment on the verdict.   Dkt. 182.   However, the Court found that the

_____ : _____

Initials of Preparer

PMC

**Exhibit "A"       Page 10 of 18**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|----------|------------------------|---|------|-------------------|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

action had not ended for all claims and the Court had not made a ruling under Rule 54(b), meaning the action had not ended as to the Plaintiff on this claim.    Dkt. 193.    Now that final judgment has been entered with respect to all claims and parties, final judgment is also entered with respect to the Plaintiff's § 1983 claim against Cardona.    The Plaintiff is entitled to $210,000 from Cardona on this claim.

### B.    Defendant Cardona's Crossclaims Against the City

The City stated to the Court during a pretrial conference that the City will usually indemnify and defend its officers when they are the targets of § 1983 lawsuits.    However, the City usually does this as a matter of policy, not as a matter of law.    In this case, the City chose not to indemnify or defend Cardona because it believed he was acting out of personal malice for the Plaintiff, not as a police officer legitimately arresting a suspect.    As a result, Cardona was forced to bring defense and indemnification crossclaims against the City in an attempt to force it to pay his legal bills and any judgment against him.

The California Tort Claims Act immunizes public entities from liability except as provided by statute.    *See Eastburn v. Regional Fire Port. Auth.*, 31 Cal.4th 1175, 1179 (2003); Cal. Gov't Code § 815(a).    In California, a public entity has a statutory duty to provide for the defense of current or former employees who are sued civilly for acts committed in the course and scope of their employment. *See* Cal. Gov't Code § 995.    However, there are exceptions to this duty to defend.    For instance, a public entity may refuse to provide for the defense of an employee if the public entity determines that the act was outside the scope of the person's employment; the person acted out of actual fraud, corruption, or actual malice; or if the defense would create a specific conflict of interest.    Cal Gov't Code § 995.2(a).    On the other hand, if the employee was acting within the course of his employment and did not act with actual fraud, corruption, or actual malice, he can recover the costs and expenses of his defense.    Cal. Gov't Code § 996.4    Similar exceptions exist with respect to the public entity's duty to indemnify its employees against civil claims or judgments against them.    *See* Cal. Gov't Code § 825.2.

In other words, the indemnification and defense statutes create a burden-shifting analysis.    First, in order to be entitled to reimbursement from the public entity, the employee must demonstrate that he was acting within the scope of his employment in order to be entitled to indemnification and defense. Cal. Gov't Code § 995.    Then, if the employee meets his burden on that prong, the public entity may still refuse to defend or indemnify the employee if it can show that the employee acted or failed to act

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**Exhibit "A"        Page 11 of 18**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

because of "actual fraud, corruption, or actual malice."    Cal. Gov't Code § 995.2(a)(2); Cal. Gov't Code § 825.2(b).

Cardona and the City disagreed with respect to both prongs of the analysis.    The City contended that Cardona was not acting within the scope of his employment because he was engaged in a private altercation with his stepdaughter's ex-boyfriend.    Cardona claimed that he was making an arrest of a kidnapping and assault suspect as part of his duties with the LAPD.    The City also contended that even if Cardona was acting within the scope of his employment, he acted with actual malice during the incident, thus relieving the City of its duty to indemnify or defend Cardona.

The Court now finds that both disputes have been resolved by the jury.    In the first phase of trial, the jury found for the Plaintiff on the § 1983 claim against Cardona, meaning they must have found that he either acted or purported to act in the performance of his official duties.    The Court clarified with the jury whether they found that Cardona actually acted in the performance of his official duties rather than merely purported to act.    The jury clarified that they found that Cardona acted in the performance of his official duties.    While the analysis for whether a person acted under the color of state law question is not identical to the analysis regarding the scope of his employment, the Court found that the jury's decision necessitated a finding that Cardona was acting within the scope of his employment during the altercation.    Thus, Cardona met his initial burden, meaning the City had to show that Cardona was acting with actual fraud, corruption, or actual malice in order to avoid liability.

The Court addressed the second prong of the analysis during the second phase of trial.    The evidence that had been presented by the parties clearly demonstrated that Cardona's actions only could have involved malice, not corruption or fraud.    Thus, in addition to calculating damages for the Plaintiff as the result of Cardona's § 1983 violation, the jury was also asked, "Did Defendant Mario Cardona act with malice towards Plaintiff Daniel Garza?"    Dkt. 186.    Malice was defined for the jury as Defendant Cardona acted with the "intent to cause injury or that his conduct was despicable and was done with willful and knowing disregard of the rights or safety of another.    A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.    'Despicable conduct' is conduct that is so mean, vile, base, or contemptible that it would be looked down on and despised by reasonable people." Dkt. 183.    The jury answered the question of whether Cardona acted with malice with "Yes."

Initials of Preparer

PMC

Main Document       Page 28 of 34

#:2795

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

The jury's finding that Cardona acted with malice towards the Plaintiff is fatal to his crossclaims for indemnification and defense against the City.    As stated above, the City is not obligated to indemnify or defend Cardona if it can show that he acted with malice.    Cal. Gov't Code § 995.2(a)(2); Cal. Gov't Code § 825.2(b).    The jury's finding of malice means that the City has satisfied its burden and cannot be forced to indemnify or defend Cardona.    Thus, the Court ENTERS judgment on the verdict with respect to Cardona's crossclaims for the City.    Cardona takes nothing from the City.

## C.    **Plaintiff's *Monell* Claim Against the City**

The one claim that has not been resolved by the jury is the Plaintiff's § 1983 claim against the City under a theory of *Monell* liability.    The City brought a motion for summary judgment on the Plaintiff's *Monell* claim before trial.    Dkt. 73.    In the motion, the City argued that it could not be held liable for Cardona's actions because there was no evidence that an unconstitutional policy, practice, custom, or ratification by the City caused the alleged constitutional violation.    *Id.* at 10-13.    In opposing the motion, the Plaintiff attempted to raise triable issues of fact regarding the City's *Monell* liability using two theories.    First, the Plaintiff argued that the City ratified Cardona's unconstitutional behavior when a policymaker of the City sent a letter to the Plaintiff informing him that his complaints were either "Unfounded" or "Exonerated," meaning that Cardona's actions were justified, lawful, and proper.    Dkt. 92 at 15-18.    Second, the Plaintiff briefly argued that the wrist lock utilized by Cardona was pursuant to the training and policy of the LAPD.    *Id.* at 19.    The Plaintiff supported this contention with deposition testimony from Cardona and Sergeant Hoskins, stating that the application of a wrist lock while the Plaintiff was handcuffed was justified under LAPD policies.    Hoskins Depo., 90:5-25; Cardona Depo Vol I., 272:1 – 273:15, 274:15 – 275:13.    Thus, the wrist lock policy itself could form the basis of the City's liability under *Monell*.

In ruling on the motion for summary judgment, the Court found that the letter sent by a representative of the City to the Plaintiff "does not constitute ratification by a policy-maker sufficient to raise triable issues of fact that City Defendants should be subject to municipal liability."    Dkt. 150 at 12.    While the parties may refer to the previous order for the full analysis, the Court's general finding was that the letter could not form the basis of *Monell* liability because the City was forced to make factual determinations about what had transpired between the Plaintiff and Cardona.    *Id*.    These factual determinations did not lay out a municipal policy, and they did not ratify unconstitutional conduct.    *Id.* at 12-13.    Instead, the letter stated that Cardona's actions, as determined by the City,

Initials of Preparer

PMC

**Exhibit "A"      Page 13 of 18**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

were justified and proper. *Id.* at 13. Such a statement is not equivalent to ratifying unconstitutional actions such that the City must also be liable for Cardona's constitutional violations. Without any further evidence that the City had a policy of condoning unnecessarily painful or unconstitutional actions, the Plaintiff's evidence involving the letter was insufficient to create a triable issue of fact regarding *Monell* liability. *Id.* Any other finding would open up municipalities to liability whenever the City's investigation of an officer's actions came to different factual conclusions than a jury's findings regarding § 1983 violations. Such liability is not allowed under *Monell*, and therefore the Plaintiff's argument regarding the letter was dismissed by the Court.

Even though the Plaintiff's first theory of *Monell* liability was dismissed at the summary judgment stage, the Court found that the Plaintiff's second theory of *Monell* liability survived summary judgment. The Plaintiff provided some evidence that a potentially painful wrist lock was used against a non-resisting suspect, and that such a practice was consistent with LAPD policy. *Id.* at 14. Such a scenario is the prototypical example of *Monell* liability: a municipal policy that instructs officers to commit unconstitutional excessive force. Thus, the Plaintiff's *Monell* claim based on the wrist lock used by Cardona survived summary judgment. *Id.* The Court also noted that the letter sent by the City could be used as evidence that Cardona's use of the wrist lock was consistent with LAPD policy and thus might still be relevant to the *Monell* claim under a theory of an unconstitutional policy even though it was insufficient to sustain an independent *Monell* claim under a theory of ratification. *Id.*

However, after the evidence presented by the Plaintiff at trial, the Court now finds that the Plaintiff cannot sustain a *Monell* claim against the City as a matter of law. The Court allowed the *Monell* claim to go forward because the Plaintiff presented some evidence during summary judgment that Cardona's actions, which the jury found unconstitutional, were consistent with LAPD policy. *Id.* If the jury found both that Cardona's actions were unconstitutional and also consistent with LAPD policy, the City would be liable for its own unconstitutional policy and the constitutional violations that the Plaintiff suffered as a result.

Instead, the Plaintiff presented evidence at trial that Cardona's actions were *not* consistent with LAPD policy. Plaintiff's counsel elicited testimony from multiple police witnesses that using a wrist lock, which was described at trial as the manipulation of a handcuffed suspect's finger in order to cause pain, on an unresisting suspect was inconsistent with LAPD policy and therefore constituted excessive force. *See, e.g.,* Direct Examination of Justin Wade, 4:11-20, June 22, 2017 ("Q: Officer Wade, is it

Initials of Preparer

PMC

**Exhibit "A"        Page 14 of 18**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

within LAPD policy to apply a wrist lock when an individual is in the prone position handcuffed and not resisting?   A: No."); Cross Examination of Gregory Hoskins, 15:8-16, June 22, 2017 ("Q: If an individual is prone on the ground, handcuffed and not resisting, is it appropriate pursuant to Los Angeles Police Department policy to use a wrist lock in a manner to cause pain to that person? … A: No, it wouldn't be appropriate."); Direct Examination of Antonio Garcia, 8:6-10, June 22, 2017 ("Q: And when you train those officers, you train those officers that unless the person is resisting when they're handcuffed prone on the ground, there's no reason to apply a pain-compliance technique, correct?   A: Correct, sir.")   While Cardona understandably attempted to present evidence that the wrist lock was within the department policy,[5] the jury's verdict in favor of the Plaintiff made it clear that the jury accepted the Plaintiff's version of events and rejected Cardona's.

Thus, there is no dispute of fact between the two parties involved in the *Monell* claim – the Plaintiff and the City – that Cardona acted outside of LAPD policy when executing the wrist lock.   The City has consistently maintained that all of Cardona's actions violated LAPD's policies regarding arrest procedures.   Indeed, the City's theory throughout the case has been that all of Cardona's actions, including the wrist lock placed on the Plaintiff while he was not resisting, were not consistent with LAPD policy because Cardona was acting as an angry stepfather, not as a level-headed police officer. As stated above, during trial the Plaintiff also presented evidence that Cardona's use of the wrist lock violated LAPD policy because the Plaintiff was not resisting at the time of the restraint, and the wrist lock was a procedure used specifically to subdue resisting suspects through pain.   This arrest strategy was described at trial as a "pain compliance" technique.   Thus, the two sides agreed at trial that Cardona's use of the wrist lock exceeded the amount of force that the LAPD trains its officers to use on unresisting suspects.   In other words, there is no triable issue of fact regarding whether the wrist lock was consistent with LAPD policy because both relevant parties agree that it was not.   Although Cardona argued that he acted within policy, he is not a party to the Plaintiff's *Monell* claim.

---

[5] Cardona did not dispute that he used the wrist lock and finger manipulation on the Plaintiff even after the Plaintiff had been handcuffed.   Indeed, it would have been implausible for Cardona to dispute he used the wrist lock on the handcuffed Plaintiff, as the video showed him doing just that.   Instead, Cardona claimed that the Plaintiff was resisting during the arrest, and that therefore the wrist lock was necessary to subdue a resisting suspect per LAPD policy.   Thus, the factual dispute resolved by the jury was not whether the wrist lock occurred, but rather whether the Plaintiff had been resisting, as the Plaintiff's resistance determined whether Cardona's use of the wrist lock constituted excessive force.   Ultimately, the jury decided that the Plaintiff had not been resisting and that therefore the wrist lock constituted excessive force.

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

Without at least a question of fact remaining that Cardona acted consistent with LAPD policy when he violated the Plaintiff's constitutional rights, the Plaintiff cannot satisfy the causation element of a *Monell* claim.   In order to succeed on a *Monell* claim against a government entity, a plaintiff must demonstrate that the policy or custom he has identified actually caused the constitutional violation that he suffered.   *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002).   Further, a plaintiff must show that the custom or policy had a "direct causal link" to the deprivation of the plaintiff's constitutional rights.   *Wallis v. Spencer*, 202 F.3d 1126, 1143 (9th Cir. 1999).   The Plaintiff cannot satisfy the causation element because he agrees that Cardona did not act consistently with LAPD's wrist lock policy.   By acknowledging that Cardona did not act pursuant to an official LAPD policy, the Plaintiff has not raised a triable issue of fact that the City's actions caused his constitutional deprivation, as Cardona's relevant actions were undeniably not encouraged or aided by a policy that he did not actually follow.   The LAPD's policy certainly could not be a "moving force" behind the Plaintiff's constitutional harm, as required for a *Monell* claim, as both sides acknowledge that the Plaintiff exceeded the force allowed under the policy.   *Chew v. Gates*, 27 F.3d 1432, 1444, 1456 (9th Cir. 1994).   As a result, the Court must find for the City on the Plaintiff's *Monell* claim as a matter of law, because there is no triable issue for the jury to determine as to whether the City's policy "caused" the Plaintiff to suffer a constitutional deprivation at the hands of Cardona.

Finally, the Plaintiff cannot now change his argument regarding whether Cardona acted consistent with LAPD policy because of the doctrine of judicial estoppel.   "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."   *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996) (citing 18 Charles A. Wright et al,, *Fed. Practice and Proc.* § 4477 (1981 & Supp. 1995); *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993)).   However, a party must succeed in the prior proceeding in order to be precluded by judicial estoppel in a later proceeding, as otherwise there is no risk of inconsistent court determinations and thus little threat to judicial integrity.   *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The circumstances of this case and trial proceedings provide precisely the risk of inconsistent court determinations and the threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent.   As discussed thoroughly in this Order, the Plaintiff repeatedly argued to the jury during the first phase of trial that Cardona's actions used more force to restrain the Plaintiff than was

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**Exhibit "A"        Page 16 of 18**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | | Date | September 13, 2017 |
|---|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | | |

justified under LAPD policy.    In fact, the Plaintiff's central argument to the jury regarding why Cardona's use of force should be found excessive was that LAPD policy stated that the wrist lock used by Cardona was only appropriate for resisting suspects, and the Plaintiff was not resisting.    The Plaintiff then prevailed in the first phase of trial using that argument, as the jury found for the Plaintiff on his § 1983 claim against Cardona.    Therefore, allowing the Plaintiff to now take an inconsistent position during the *Monell* phase of trial by arguing that Cardona's actions were in fact consistent with LAPD policy would directly threaten judicial integrity.    In other words, the Plaintiff proved to the jury that Cardona was liable to the Plaintiff because his actions exceeded LAPD policy regarding the wrist lock, and he now wishes to hold the City liable for its policy by arguing that Cardona acted consistent with that policy.    Thus, the Plaintiff seeks to gain an advantage in the *Monell* phase of the trial by taking a position that is directly incompatible with the argument he used to prevail in the individual liability phase of the trial.    This is the exact use of inconsistent positions to gain an advantage and the threat to judicial integrity that judicial estoppel precludes.    Thus, the Plaintiff cannot now pursue his *Monell* claim against the City, as he cannot show that the LAPD policy caused his constitutional harm without resorting to an inconsistent position that is precluded by the doctrine of judicial estoppel.

Because the only theory of *Monell* liability that survived summary judgment was that the wrist lock policy was unconstitutional, the Court now finds that the Plaintiff has not raised a triable issue of fact regarding the City's liability for the Plaintiff's § 1983 claim.    The City cannot be liable for Cardona's actions because the Plaintiff convinced the jury that Cardona acted excessively when he violated LAPD policy with respect to when a wrist lock should be employed.    Thus, the LAPD's wrist lock policy could not have caused the constitutional violation experienced by the Plaintiff.    That violation is attributable to Cardona alone because the jury agreed with the Plaintiff that Cardona violated LAPD policy when he utilized excessive force during his arrest of the Plaintiff.    Thus, the Court DIRECTS the entry of judgment as a matter of law for the City on the Plaintiff's § 1983 *Monell* claim.

### IV.    FINAL JUDGMENT

As described above, this Court withheld entering final judgment on any claims because not all claims had been adjudicated under Rule 54(b).    Dkt. 193.    All claims in this action have now been adjudicated.    The action is now ended as to all claims, and final judgment is entered with respect to all claims.    The time period for post-trial motions will begin at the filing of this Order.

Initials of Preparer                                          :

                                                                        PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

### V.    ORDER

For the foregoing reasons, the Court ALLOWS final judgment on the verdict for the Plaintiff in the amount of $210,000 for his § 1983 claim against Defendant Cardona.

The Court ALLOWS judgment on the verdict for the City on Cardona's crossclaims for indemnification and defense against the City.

The Court DIRECTS the entry of judgment as a matter of law for the City on the Plaintiff's § 1983 claim against the City on the theory of *Monell* liability.

IT IS SO ORDERED.

Initials of Preparer

PMC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010**

A true and correct copy of the foregoing document entitled **Motion for Relief From the Automatic Stay under 11 U.S.C. § 362 (Action in Nonbankruptcy Forum)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 2, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jaenam J Coe (Db)        coelaw@gmail.com
Baruch C Cohen (Cr)      bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
Nancy K Curry (TR)       TrusteeECFMail@gmail.com
Valerie Smith (Int)      claims@recoverycorp.com
U S Trustee (LA)         ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **January 2, 2018,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 2, 2018,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Julia W. Brand, Roybal Federal Bldg. & Courthouse, 255 E. Temple St, Ste 1382, Los Angeles CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **January 2, 2018** | **Baruch C. Cohen** | /s/ Baruch C. Cohen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**